ALBERT HARKNESS and others *v.* ENOCH REMINGTON.

A court of equity will not specifically enforce, against a tenant in common, a partition of the joint estate, made by a majority in interest of his fellow tenants, under a sealed agreement, executed by all, in these words: "We, owners of the R. farm, so called, in B., hereby agree to any division of the remaining portion of said farm unsold, which a majority of interest in said property shall decide upon as fair and equitable;" because, the agreement may well be interpreted to give to the majority in interest the right only to select some equitable mode of division which shall secure the interests of the minority, and, because, if otherwise interpreted, it has no valuable consideration or mutual benefit to support it, and is unjust and unconscionable.

THIS was a bill in equity brought by several tenants in common against a co-tenant, to enforce a division of the joint estate,

made, as alleged, in pursuance of an agreement between them, or, in the alternative, for partition of the estate, and for an account of the rents and profits of the same, received by the defendant.

The plaintiffs and defendant, and Messrs. A. C. Hawes & Brothers, were joint owners of the Remington farm, in Barrington; and in 1852, had procured the same to be surveyed and divided into villa lots, and a plat to be made indicating the lots, a public square, and streets. After the plat was made, two of the lots were sold by it to one Charles T. Miller; and the defendant became, by purchase, the owner in severalty of three of the other lots, besides being a tenant in common, as one of the original undertakers, of three undivided tenth parts of the remaining lots. On the 29th day of June, 1859, the plaintiffs and defendant, and the said A. C. Hawes & Brothers, being all the coöwners of said lots, entered into the following agreement, under seal:—

" We, the owners in the Remington farm, so called, in Barrington, hereby agree to any division of the remaining portion of the said farm unsold, which a majority of interest in said property shall decide upon as fair and equitable.

" Witness our hands and seals this twenty-ninth day of June, 1859."

A. C. Hawes & Brothers sold their interest to one of the plaintiffs, before the agreement aforesaid, although the deed was not recorded until the month following; and afterwards, the plaintiffs, who were owners of a major part of the undivided property, and indeed of all of it, except what belonged to the defendant, made what they deemed to be a fair and equitable division of the lots, not including the square and streets, between the several joint-owners, appropriating to each his several share, by reference to the plat. A memorandum of the division, stating the share of each, including the defendant, and setting off to each the lots deemed appropriate to his share, was signed by all the plaintiffs, but not by the defendant; nor did it appear that he had anything to do with the division. It was the division thus made that the bill was principally brought to enforce.

The defendant set up in his answer, that he signed the above agreement, without consideration, at the request of some of the complainants ; and that, in signing and sealing the same, his intention was, and he understood, and supposed that the intent, meaning, and effect of said paper was, to enable the owners of a major part of said land to decide and determine in what manner a fair and equitable partition of the same should be made : whether, by disinterested persons, by part of the owners making the division, for the others to take their choice, by giving to each of the owners a right to bid for a choice, or in whatever other reasonable manner ; but that he did not intend, and did not understand or suppose that the intent, meaning, or effect of said paper was, to enable the owners of a majority of the interest to make a final division themselves, taking so much of the land for themselves . as they pleased, and allotting as little as they pleased to the other owners ; and that if said paper or agreement shall be so construed, as to give such absolute power to the majority, to make such partition, the defendant insists that the same is unreasonable, unconscionable, fraudulent and void. As a witness, the defendant also swore that he understood the paper as set forth in his answer. He also insisted, in his answer, that the division did not include all the undivided land, to wit, a large lot, marked on the plat as the Public Square, which, when he signed the agreement, he wished to have, and supposed would be, and which ought to be, but is not, included in the division. He admitted that he had been in possession of the common land ever since March, 1856, and had received the rents, profits and issues thereof; but denied his liability to account to the plaintiffs therefor, on the ground, that he took possession of said lands by virtue of a written agreement, by virtue of which he was to have all the growths, issues and profits of the lands for one year, unless the lands should be sooner sold, in consideration of his paying taxes upon the property and taking proper care of the same ; that since the execution of the agreement, no new agreement, written or verbal, has been made, and he has ever since continued to use the lands, as he supposed, upon the same terms, and has continued to pay the taxes and to take care of the property accordingly ; and that the little profit he has realized from cultivating the soil, or which he

has or could have realized from the property, has been less than the taxes thereon, which he has paid, and the time and money which he has expended in going to the premises, and in attending to and taking charge and care of the fences and land. It appeared that the agreement under which the defendant took and held possession of the common land, which was signed by the agent of the tenants in common, was as follows :—

"PROVIDENCE, March 20, 1856.

"I, A. V. D., do agree that Enoch Remington shall have the rents and profits of all the unsold lots of land, as delineated on a plat of the Barrington land, bought of said Remington, in consideration that he shall take good and husbandry care of the property, build all the fences, and pay the taxes that may be assessed against the estate, reserving the right, at any and all times, to make sale of all or any portion thereof, as opportunity may offer ; which term of time shall terminate in one year from the first of April next. And it is further understood, that the said Remington shall have the right to retain his crops, or be allowed a fair compensation therefor."

There was no suggestion in the answer or in the proof, that the defendant's fair share of the common lands was not appropriated to him by the division made by his co-tenants.

*James Tillinghast, for the plaintiff,* cited to the point of consideration, *Penn v. Lord Baltimore,* 1 Ves. Sr. 444 ; *Beckley v. Newland,* 2 P. Wms. 182 ; *Knollys v. Alcock,* 5 Ves. Jr. 648, 653 ; 2 Story's Eq. Jurisp. §§ 729, 785.

*Blake, for the defendant.*

AMES, C. J. This agreement for the division of a joint estate is a singular one, as construed by the plaintiffs, to wit, that the tenants in common, owning the major part of the joint estate, were to divide it amongst the coöwners as such majority should deem to be just and equitable, and that this division should be binding upon the others. The agreement, literally considered, may bear this interpretation ; but the more natural one, looking at the substance of the matter, is that suggested in the answer of the defendant, and sworn to by him, as that under which he signed

it,—that the land was to be divided in the *mode* arranged by the majority in interest, but as is usual, in some mode, if not by disinterested persons, so that, by lot, or bidding for a choice, the rights of the minority might be secured. It is true, that the answer does not raise the issue, that the division made was unfair to the defendant; but the mode of making it,—to set off to the defendant, without his assent, or giving him a chance to right himself, a certain portion of the common land, and to insist that he should abide by it,—is the last mode, where, as here, there was a choice of modes, that would suggest itself to those who desired, to enforce their doings, the aid of a court of equity. Besides, there is the absence here of all valuable consideration for the agreement,—always requisite where the specific execution of a contract wholly *in fieri* is sought in a court of equity,—and in this aspect, no additional force is given to the agreement because it is evidenced by an instrument under seal.　Adams on Equity, 78.　We look in vain for the " *mutual* benefit " in this agreement, as construed by the plaintiffs, which was the support of the agreements enforced in *Penn* v. *Lord Baltimore*, 1 Ves. Sen. 444, and in *Beckley* v. *Newland*, 2 P. Wms. 181, 183.　Upon the construction of the plaintiffs, this agreement for a partition puts the rights of the minority at the mercy of the majority in interest, without a chance of escape.

In fine, where the right is so certain and the remedy so easy, as in the partition of a joint estate, we do not feel called upon to exclude the defendant from it, by giving to the plaintiffs our aid in the enforcement of a contract so liable to be misunderstood, on account of the barrenness of its terms, and so unjust and unconscionable, as interpreted by the plaintiffs; but prefer to turn them over to the alternative prayer of their bill, and to appoint disinterested commissioners to make partition between the parties, by metes and bounds, according to their rights, as set forth in the bill, and admitted by the answer.　The streets and public square laid down on the plat mentioned in the pleadings, must, according to the agreement of the parties thus declared, and out of regard to the rights of those who have bought lots of them upon the faith of it, be excluded from the partition.　If the plaintiffs desire an account of rents and profits over and above the taxes

paid by the defendant and his charge and care, which the agreement for the first year of his occupation supposed would balance each other, they can have it, and a master must be appointed for the purpose of taking it.